**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| Fabienne C. Grenet<br>3927 Sexton Drive,<br>Columbus, Ohio 43228,<br><br>      Plaintiff,<br><br>v.<br><br>U.S. Bank National Association,<br>c/o CT Corporation System,<br>4400 Easton Commons Way, Suite 125,<br>Columbus, Ohio 43219,<br><br>      Defendant. | CASE NUMBER:<br><br>JUDGE:<br><br>**JURY DEMAND ENDORSED HEREIN** |

---

### COMPLAINT FOR MONEY DAMAGES AND OTHER RELIEF

---

The following allegations are based upon Plaintiff Fabienne Grenet's ("Plaintiff")
personal knowledge, the investigation of counsel, and information and belief. Plaintiff,
through counsel, alleges as follows:

### INTRODUCTION

1. In 2018, Plaintiff and her now ex-wife, Kimberly Barth ("Ms. Barth"), entered
   into a Federal Housing Administration ("FHA") mortgage loan with Defendant
   U.S. Bank National Association ("Defendant") to finance the purchase of real
   estate located at 3927 Sexton Drive, Columbus, Ohio 43228 (the "Property")
   (the "Mortgage Loan"). A true and accurate copy of the Mortgage Loan is
   attached hereto as Exhibit A.

2. The Plaintiff and Ms. Barth purchased the Property to be used as their primary
   residence.

1

3.  In or about March of 2020, Plaintiff began experiencing financial difficulties as the Ohio Department of Health issued an order for her to halt her massage business due to Covid-19.

4.  On or about March of 2020, Defendant placed Plaintiff's Mortgage Loan on a forbearance plan.

5.  Before the forbearance plan expired, Defendant promised Plaintiff that it would grant her a FHA Partial Claim and Modification at the end of her forbearance period in order to bring her Mortgage Loan current.

6.  Instead, Defendant has added excess charges and fees to the Mortgage Loan while it was in forbearance, repeatedly made misrepresentations to Plaintiff, repeatedly demanded that Plaintiff "force" Ms. Barth to sign loan modifications it offered, repeatedly failed to review Plaintiff for loss mitigation options or provide Plaintiff with correct information and notices in connection with the CARES Act, RESPA, and Regulation X, and generally engaged in a pattern or practice of malicious incompetence all in an attempt to manufacture a default by Plaintiff.

7.  Plaintiff has brought this lawsuit to correct those improper charges and enjoin Defendant from filing a foreclosure before it has satisfied all conditions precedent under Federal Law.

## PRELIMINARY STATEMENT

8.  Plaintiff institutes this action for actual damages, statutory damages, punitive damages, declaratory and injunctive relief, attorney fees, and the costs of this action against Defendant for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617 (1974) ("RESPA"), violations of Regulation X, 12

C.F.R. §§ 1024.1-1024.41 (2011) ("Reg X"), violations of the Coronavirus Aid, Relief, and Economic Security Act, 15 U.S.C. §§ 9001-9141 (2020) (CARES Act), promissory estoppel, fraud, and declaratory and injunctive relief.

**JURISDICTION**

9. This Court has subject matter jurisdiction over Count One under RESPA, 12 U.S.C. § 2614, and 28 U.S.C. §§ 1331 and 1337.

10. This Court has subject matter jurisdiction over Counts Two, Three, and Four pursuant to 28 U.S.C § 1367, as those claims form part of the same case or controversy as Count One.

11. This Court has personal jurisdiction over Defendant because Defendant transacts business within this District, the Mortgage Loan was incurred within this District, and the property which was the subject of the Mortgage Loan is located within this District. *International Shoe v. Washington*, 326 U.S. 310 (1945).

**VENUE**

12. The majority of the witnesses reside in the Southern District of Ohio.

13. A substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Ohio.

14. All of the property that is the subject of the action is situated in Southern District of Ohio.

15. Venue is proper in accordance with 28 U.S.C. § 1391(b)(2).

**PARTIES**

16. Each action or inaction alleged herein against Defendant is also an allegation of action or inaction by Defendant's agents, predecessors, successors, employees, contractors, assignees, assignors, and servicers, as appropriate.

3

17. Plaintiff is a natural person currently residing within this Court's jurisdiction at 3927 Sexton Drive, Columbus, Ohio 43228.

18. At all times relevant to this transaction, Plaintiff was and is a **"Person"** within the meaning of RESPA, 12 U.S.C. § 2602(5).

19. At all times relevant to this transaction, Plaintiff was and is a **"Borrower"** within the meaning of RESPA.

20. At all times relevant to this transaction, Plaintiff was and is a **"Borrower"** within the meaning of Reg X, 12 C.F.R. § 1024.30(d).

21. Defendant is a mortgage lender and servicer headquartered in Minneapolis, Minnesota

22. At all times relevant to this transaction, Defendant was and is a **"Person"** within the meaning of RESPA, 12 U.S.C. § 2602(5).

23. At all times relevant to this transaction, Defendant was and is a **"Servicer"** within the meaning of RESPA, 12 U.S.C. § 2605(i)(2).

24. At all times relevant to this transaction, Defendant engaged in and engages in **"Servicing"** of Plaintiff's Mortgage Loan within the meaning of RESPA, 12 U.S.C. § 2605(i)(3).

 **FACTUAL ALLEGATIONS**

25. Plaintiff incorporates all paragraphs by reference as though fully written here.

26. The Mortgage Loan was and is an FHA loan and hence a "federally related mortgage loan" within the meaning of RESPA at 12 U.S.C. § 2602(1).

27. The Mortgage Loan was and is an FHA insured loan and hence a "federally backed mortgage loan" within the meaning of the CARES Act at 15 U.S.C. § 9056(a)(2).

4

28. Plaintiff is and was a licensed massage therapist at all times relevant to this Complaint.

29. On March 19, 2020, the Ohio Department of Health ordered all massage therapy locations to cease business operations due to Covid-19 ("ODH Order").

30. In March of 2020, Plaintiff began to experience financial difficulty due to Covid-19 and the ODH Order.

31. In March of 2020, Plaintiff called Defendant regarding her financial difficulty due to Covid-19.

32. During the call, Defendant told Plaintiff that it would place her on a Covid-19 Forbearance Plan.

33. During the call, Defendant told Plaintiff that under the Forbearance Plan she would not be required to make monthly payments, that Defendant would not charge her late fees for missing those payments ("Forbearance Plan").

34. On or about September 2, 2020, Defendant sent Plaintiff a letter notifying Plaintiff of her repayment options at the end of the Forbearance Plan.

35. On or about September 15, 2020, Plaintiff called Defendant to ask about the repayment options.

36. On or about September 15, 2020, Defendant through its agent "Haley" told Plaintiff that it would offer her an FHA Partial Claim or mortgage assistance and a loan modification at the end of the Forbearance Plan.

37. Under the Pandemic Plan, the forbearance period was to end on September 30, 2021.

38. On or about September 2, 2021, Defendant sent Plaintiff a letter notifying her

that the Forbearance Plan would end on September 30, 2021.

39. On or about September 7, 2021, Plaintiff called Defendant regarding the end of her Forbearance Plan.

40. On or about September 7, 2021, Defendant promised Plaintiff that it would grant her a Loan Modification at the end of her Forbearance Plan ("First Loan Modification").

41. On or about September 7, 2021, Defendant promised Plaintiff that the First Loan Modification would bring her Mortgage Loan current, reduce her monthly payments to $781.44/month, extend her payment term until 2051, and adjust the interest rate on her Mortgage Loan to 3.25%.

42. On or about September 9, 2021, Defendant sent Plaintiff a mortgage statement which stated that her account was delinquent, and that she was required to pay $18,091.08 by October 1, 2021, or face foreclosure.

43. On or about October 7, 2021, Defendant sent Plaintiff an approval letter for a Stand Alone Partial Claim. A true and accurate copy of the approval letter is attached hereto as Exhibit B.

44. The Stand Alone Partial Claim listed Plaintiff's monthly payments as $1,066.27/month.

45. On or about October 11, 2021, Plaintiff called Defendant regarding the monthly payment amount listed on the Stand Alone Partial Claim as it was higher than the payment Defendant promised her.

46. On or about October 11, 2021, Defendant told Plaintiff that she would need to opt out of the Stand Alone Partial Claim to be approved for the Loan

Modification at the lower monthly payment.

47. Relying on Defendants representation, on or about October 11, 2021, Plaintiff opted out of the Stand Alone Partial Claim to be reviewed for the Loan Modification.

48. On or about November 2, 2021, Defendant sent Plaintiff a letter stating that Plaintiff had been withdrawn from customer assistance review.

49. On or about November 8, 2021, Plaintiff called Defendant regarding the notice that she had been withdrawn from customer assistance review.

50. On or about November 8, 2021, Defendant, through its agent "Devin" again promised Plaintiff that it would approve her for a loan modification with the following terms: Defendant promised Plaintiff that the Loan Modification would bring her Mortgage Loan current, reduce her monthly payments to $794.29/month, extend her payment term until 2051, adjust the interest rate on her Mortgage Loan to 3.125%, and that her first monthly payment would be on January 1, 2022 ("Second Loan Modification").

51. On or about November 8, 2021, Plaintiff informed Defendant that she was divorcing Ms. Barth, the co-borrower on her Mortgage Loan.

52. On or about November 8, 2021, Defendant informed Plaintiff that she would need a divorce decree or quit claim deed to approve her for the Second Loan Modification in Plaintiff's name only.

53. On or about November 8, 2021, Defendant promised Plaintiff that it would grant her a short-term forbearance until she finalized her divorce.

54. On or about November 8, 2021, Defendant told Plaintiff that any payments

made on her Mortgage Loan would cancel the forbearance and prevent Plaintiff from receiving a loan modification.

55. On or about November 8, 2021, Defendant promised Plaintiff that it would send her a new loan modification every 14 days until she received her divorce decree to keep her loss mitigation application open and active.

56. On or about November 8, 2021, Defendant promised Plaintiff that she would receive a loan modification in Plaintiff's name only once she provided Defendant with her divorce decree.

57. On or about November 8, 2021, Defendant sent Plaintiff a mortgage statement which stated that her account was delinquent, and that she was required to pay $19,980.00 by December 1, 2021, or face foreclosure.

58. On or about November 8, 2021, Defendant sent Plaintiff a letter denying her any loss mitigation options ("Loss Mitigation Denial Letter"). A true and accurate copy of the Loss Mitigation Denial Letter is attached hereto as Exhibit C.

59. The Loss Mitigation Denial Letter states that Defendant denied Plaintiff based on an "incomplete application", does not list the loss mitigation options Plaintiff was evaluated for, and does not inform Plaintiff of the method for appealing the determination.

60. Prior to sending the Loss Mitigation Denial Letter, Defendant failed to send Plaintiff notices regarding the receipt of documents, the receipt of the loss mitigation application, and the identification of which additional documents Plaintiff needed to submit to complete the loss mitigation application.

61. On or about November 15, 2021, Plaintiff called Defendant regarding the Loss

Mitigation Denial Letter.

62. On or about November 15, 2021, Defendant, through its agent Naila, told Plaintiff to wait a week before asking for a forbearance and loan modification.

63. On or about November 15, 2021, Defendant again promised Plaintiff that it would grant her a loan modification once her divorce was finalized.

64. From November 15, 2021, until the present, Plaintiff called Defendant every week regarding the loan modification Defendant promised her.

65. On each of those phone calls, Defendant would provide Plaintiff with conflicting information regarding her loss mitigation application and loan modification, refused to give Plaintiff a single point of contact for Defendant, refused to provide contact information to Plaintiff, refused to provide Plaintiff with names or identification numbers for the agents she was speaking with, refused to inform Plaintiff what documents were needed to complete her loss mitigation application, and even demanded that Plaintiff "force" her ex-wife Ms. Barth to sign loan modifications.

66. From November 15, 2021, until the present, Defendant has sent Plaintiff multiple loan modification agreements and partial claims, all of which required Plaintiff's ex-wife Ms. Barth to sign documents.

67. From November 15, 2021, until the present, Plaintiff has repeatedly informed Defendant that she cannot force her ex-wife Ms. Barth to sign the loan modification agreements or partial claims.

68. On or about March 9, 2022, Defendant sent Plaintiff a letter advising her of loss mitigation options and a form for a loss mitigation application ("Loss Mit

Letter"). A true and accurate copy of the Loss Mit Letter is attached hereto as Exhibit D.

69. The Loss Mit Letter did not contain a date by which Plaintiff was required to submit the loss mitigation application for it to be considered by Defendant.

70. On or about March 16, 2022, Defendant sent Plaintiff a notice that it was initiating a foreclosure against Plaintiff ("Foreclosure Notice"). A true and accurate copy of the Foreclosure Notice is attached hereto as Exhibit E.

71. On or about March 24, 2022, Defendant sent Plaintiff a letter acknowledging that it had received an incomplete loss mitigation application. The letter fails to identify which additional documents Plaintiff needed to submit to complete the loss mitigation application, and which date Plaintiff needs to submit the documents by. A true and accurate copy of the letter is attached hereto as Exhibit F.

72. From about March 9, 2022, until the present, Plaintiff has called Defendant every week to determine what documents are needed to complete her loss mitigation application.

73. From about March 9, 2022, until the present, Plaintiff has submitted the documents Defendant requested in those phone calls to complete her loss mitigation application.

74. From about March 9, 2022, until the present Defendant has repeatedly asked for documents that Plaintiff had already submitted to it, documents already in its possession, and documents outside of Plaintiff's possession or control.

75. From about March 9, 2022, until the present Defendant has repeatedly

confirmed that it has received Plaintiff's documents, only to later deny that it had ever received them.

76. From about March 9, 2022, until the present Defendant has failed to send Plaintiff notices that it has received Plaintiff's documents, whether Plaintiff's loss mitigation application is complete or incomplete, and what documents Defendant needs to complete Plaintiff's loss mitigation application.

77. On or about May 4, 2022, Plaintiff's divorce was finalized.

78. From about May 10, 2022, until the present Plaintiff has repeatedly sent Defendant a copy of her divorce decree including copies of the decree after it was recorded in the Franklin County Recorder's Office.

79. The divorce decree specifically stated that Ms. Barth was to be removed from the existing Mortgage Loan, and that Plaintiff is the sole owner of the Property.

80. To date, Defendant has failed to provide Plaintiff with a loan modification in Plaintiff's name only, failed to properly review Plaintiff for loss mitigation options, and has failed to offer her all available loss mitigation options.

81. Defendant's lack of diligence resulted in increased arrearages for both the Mortgage Loan and any loss mitigation options Plaintiff could receive, resulting in lost equity.

82. For over a year Plaintiff suffered and continues to suffer extreme emotional distress over whether she will be able to keep her home because of Defendant's lack of diligence in handling loss mitigation.

83. As a result of Defendant's actions, primarily its lack of diligence and misrepresentations, Plaintiff suffers from severe emotional distress, including

anxiety, increased stress, and sleepless nights.

84. As a result of Defendant's actions, Plaintiff incurred excess arrearages for escrow, late payments, and interest charges on the loan caused by Defendant's lack of diligence and misrepresentations.

## COUNT ONE – RESPA AND REG. X VIOLATIONS AGAINST DEFENDANT

85. Plaintiff incorporates all paragraphs by reference as though fully written here.

86. Defendant's actions described herein constitute violations of RESPA, 12 U.S.C. §§ 2601-2617 (1974), Reg. X, 12 C.F.R. §§ 1024.1-1024.41 (2011), and the CARES Act 15 U.S.C. §§ 9001-9141 (2020).

87. Violations of Reg. X and the CARES Act constitute violations of RESPA pursuant to 12 U.S.C. § 2605(k)(1) and 2617(a).

88. Defendant assessed fees and penalties to Plaintiff's Mortgage Loan account beyond fees, penalties, and interest scheduled and calculated prior to the forbearance in violation of the CARES Act at 15 U.S.C. § 9056(b)(3).

89. By failing to exercise reasonable diligence related to Plaintiff's loss mitigation applications, requests, and subsequent submissions, Defendant violated Reg. X, 12 C.F.R. § 1024.41(b).

90. By failing to exercise reasonable diligence in obtaining documents and obtaining information to allegedly complete Plaintiff's loss mitigation applications, requests, and subsequent submissions, Defendant violated Reg. X, 12 C.F.R. § 1024.41(b)(1).

91. By failing to timely review loss mitigation options available to Plaintiff related to her loss mitigation applications, requests, and subsequent submissions, Defendant violated Reg. X, 12 C.F.R. § 1024.41(b)(2).

92. Defendant failed to provide Plaintiff with the correct notices regarding the receipt of documents, the receipt of the loss mitigation application itself, and the identification of which additional documents Plaintiff needed to submit to complete the loss mitigation application in violation of Reg. X., 12 C.F.R. § 1024.41(b)(2)(i)(B).

93. Defendant failed to provide Plaintiff with notice of a reasonable date by which Plaintiff was required to submit additional documents to complete the loss mitigation application in violation of Reg. X., 12 C.F.R. § 1024.41(b)(2)(ii).

94. By failing to timely review loss mitigation options available to Plaintiff related to her loss mitigation applications, requests, and subsequent submissions, Defendant violated Reg. X, 12 C.F.R. § 1024.41(c)(1).

95. Defendant attempted to evade its obligation to review Plaintiff's complete loss mitigation application by improperly denying Plaintiff all loss mitigation options based on alleged incomplete applications without giving Plaintiff the opportunity, or information required to complete those applications in violation of Reg. X., 12 C.F.R. § 1024.41(c)(2)(i).

96. Defendant offered Plaintiff a short term forbearance plan, failed to provide Plaintiff a written notice with the terms of the forbearance, the other loss mitigation options available to Plaintiff, a notice that Plaintiff may complete her loss mitigation application while in the forbearance plan, and then Defendant sent Plaintiff a Foreclosure Notice, all in violation of Reg. X., 12 C.F.R. § 1024.41(c)(2)(iii).

97. Defendant did not end any preexisting delinquency by Plaintiff upon her

acceptance of a COVID-19 related forbearance in violation of Reg. X, 12 C.F.R. § 1024.41(c)(2)(v).

98. Defendant failed to offer Plaintiff a loan modification in accordance with Reg. X, 12 C.F.R. § 1024.41(c)(2)(vi).

99. Defendant failed to immediately resume reasonable diligence efforts as required under Reg. X and RESPA after Plaintiff rejected its First and Second Loan Modifications due to Plaintiff's inability to force her ex-wife to sign the documents Reg. X., 12 C.F.R. § 1024.41(c)(2)(vi)(B).

100. Defendant violated Reg. X, 12 C.F.R. § 1024.41(c)(4)(i) when it failed to exercise reasonable diligence in obtaining information not in Plaintiff's control, including obtaining Plaintiff's ex-wife's signature.

101. Defendant violated Reg. X, 12 C.F.R. § 1024.41(c)(4)(ii) when it failed to send Plaintiff the proper notice required under that section.

102. Defendant violated Reg. X, 12 C.F.R. § 1024.41(f)(2) when it sent Plaintiff a Foreclosure Notice before it properly rejected Plaintiff for loss mitigation options, and when Plaintiff had not rejected the loss mitigation options offered by Defendant or failed to perform under a loss mitigation option.

103. Defendant violated RESPA, 12 U.S.C. § 2605(k)(1)(E) by not offering Plaintiff all available COVID-19 related loss mitigation options.

104. Defendant regularly fails to evaluate and process loss mitigation applications of its borrowers in compliance with RESPA and Regulation X, including request for loss mitigation options related to the COVID-19 pandemic.

105. Defendant engaged in a pattern or practice of noncompliance with the

requirements of RESPA.

106. Defendant does not maintain policies or procedures that are reasonably designed to provide accurate and timely notice and information to Plaintiff and other borrowers, properly evaluate borrowers for loss mitigation options, or to identify documents and information not in borrower's control in violation of Reg. X, 12 C.F.R. § 1024.38(a).

107. As a result of Defendant's actions, Plaintiff suffers severe emotional distress, including anxiety, stress, and sleepless nights.

108. As a result of Defendant's actions, Plaintiff suffers from an improper loan balance due, excess arrearages, fees, and interest, and depreciated equity due to Defendant's failure to exercise diligence and comply with RESPA, Reg. X, and the CARES Act.

109. Defendant is liable to Plaintiff under this Count for its RESPA violations in an amount equal to or greater than: statutory damages in excess of $2,000.00, actual damages for its violations of RESPA, and the costs of this action and attorney fees pursuant to 12 U.S.C. § 2605(f).

**COUNT TWO – PROMISSORY ESTOPPEL AGAINST DEFENDANT**

110. Plaintiff incorporates all paragraphs by reference as though fully written here.

111. Defendant repeatedly promised Plaintiff that it would grant her a loan modification or partial claim upon the end of her Forbearance Plan.

112. On or about October 11, 2021, Defendant told Plaintiff that she would need to opt out of the Stand-Alone Partial Claim to be approved for the Loan Modification at the lower monthly payment.

113. Relying on Defendants representation, on or about October 11, 2021, Plaintiff

15

opted out of the Stand-Alone Partial Claim to be reviewed for the Loan Modification.

114. On or about November 8, 2021, Defendant promised Plaintiff that it would grant her a short-term forbearance until she finalized her divorce.

115. On or about November 8, 2021, Defendant told Plaintiff that any payments made on her Mortgage Loan would cancel the forbearance and prevent Plaintiff from receiving a loan modification.

116. On or about November 8, 2021, Defendant promised Plaintiff that it would send her a new loan modification every 14 days until she received her divorce decree to keep her loss mitigation application open and active.

117. On or about November 8, 2021, Defendant promised Plaintiff that she would receive a loan modification in her name only once she provided Defendant with her divorce decree.

118. On or about May 4, 2022, Plaintiff's divorce was finalized.

119. From about May 10, 2022, until the present Plaintiff has repeatedly sent Defendant a copy of her divorce decree.

120. Defendant reasonably expected that its promises would induce Plaintiff into opting out of the Stand-Alone Partial claim, refrain from making payments on her Mortgage Loan, and pause sending in documents to complete her loss mitigation application.

121. Plaintiff opted out of the Stand-Alone Partial claim, refrained from making payments on her Mortgage Loan, and paused sending in documents to complete her loss mitigation application in reliance on Defendant's promises.

16

122. To date, Defendant has failed to send Plaintiff the loan modification it promised to her.

123. Justice demands that Defendant's promise to grant Plaintiff a Loan Modification Plan of the Mortgage Loan be enforced as Plaintiff has opted out of the Stand Alone Partial Claim, been subjected to increased fees, arrearages and interest, and has lost equity in her home, while Defendant has given Plaintiff nothing of value in exchange.

124. Plaintiff is entitled to specific performance on the First or Second Loan Modification Plan, in accordance with RESPA, Reg X., the CARES Act, and the U.S. Department of Housing and Urban Development's and the Consumer Financial Protection Bureau's policies, regulations, and guidelines.

## <u>COUNT THREE – FRAUD AGAINST DEFENDANT</u>

125. Plaintiff incorporates all paragraphs by reference as though fully written here.

126. Defendant's actions described in this Complaint constitute fraud.

127. Defendant repeatedly promised Plaintiff that it would grant her a loan modification or partial claim upon the end of her Forbearance Plan.

128. On or about October 11, 2021, Defendant told Plaintiff that she would need to opt out of the Stand Alone Partial Claim to be approved for the Loan Modification at the lower monthly payment.

129. Relying on Defendants representation, on or about October 11, 2021, Plaintiff opted out of the Stand Alone Partial Claim to be reviewed for the Loan Modification.

130. On or about November 8, 2021, Defendant promised Plaintiff that it would grant

her a short-term forbearance until she finalized her divorce.

131. On or about November 8, 2021, Defendant told Plaintiff that any payments made on her Mortgage Loan would cancel the forbearance and prevent Plaintiff from receiving a loan modification.

132. On or about November 8, 2021, Defendant promised Plaintiff that it would send her a new loan modification every 14 days until she received her divorce decree to keep her loss mitigation application open and active.

133. On or about November 8, 2021, Defendant promised Plaintiff that she would receive a loan modification in her name only once she provided Defendant with her divorce decree.

134. Defendant reasonably expected that its promises would induce Plaintiff into making payments to it which she did not have to make.

135. Defendant reasonably expected that its promises would induce Plaintiff into assuming the Mortgage Loan.

136. Plaintiff opted out of the Stand Alone Partial claim, refrained from making payments on her Mortgage Loan, and paused sending in documents to complete her loss mitigation application in reliance on Defendant's promises.

137. As a result of Defendant's actions, Plaintiff was improperly denied loss mitigation options.

138. As a result of Defendant's actions, Plaintiff endured sleepless nights, headaches, stress, and anxiety.

139. As a result of Defendant's actions, Plaintiff suffered severe mental anguish and emotional distress.

140. As a result of Defendant's actions, Plaintiff was forced to incur attorney fees and the expense of bringing this litigation.

141. Defendant's actions were committed with malice.

142. As a result of Defendant's actions, Plaintiff is entitled to actual damages, economic damages, non-economic damages, and punitive damages, and her attorney fees and costs of this action in an amount to be determined at trial.

## COUNT FOUR – INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT AGAINST DEFENDANT

143. Plaintiff incorporates all paragraphs by reference as though fully written here.

144. A real and justiciable controversy exists between Plaintiff and Defendant concerning whether Defendant properly reviewed Plaintiff's loss mitigation application, and whether Defendant has satisfied the requirements under 12 C.F.R. § 1024.41(f).

145. As described above, Defendant failed to properly evaluate Plaintiff for loss mitigation options.

146. As Defendant has failed to properly evaluate Plaintiff for loss mitigation options and has failed to offer Plaintiff a Loan Modification Plan, it is prohibited from making the first notice or filing required by applicable law to commence a foreclosure proceeding.

147. Plaintiff's damages alone are an inadequate remedy.

148. Plaintiff has suffered and will continue to suffer substantial injury, including a potential foreclosure on her home, as a result of Defendant's violations of federal law.

149. Absent injunctive relief by this Court, Defendant is likely to continue to injure

Plaintiff by requesting additional amounts due or by accelerating the Mortgage Loan and filing a foreclosure, reap unjust enrichment through additional fees, arrearages, and interest which it improperly added to Plaintiff's Mortgage Loan, and harm public interest.

150. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P 57, Plaintiff is entitled to judgment declaring that Defendant must comply with the conditions precedent under RESPA and Reg. X prior to making the first notice or filing required by applicable law to commence a foreclosure proceeding.

151. Plaintiff is entitled to an injunction prohibiting Defendant from adding excess arrears to Plaintiff's Mortgage Loan Account, and from filing a foreclosure against Plaintiff until it has satisfied the requirements mandated by federal law, including but not limited to those proscribed in RESPA, Reg X., the CARES Act, and the U.S. Department of Housing and Urban Development's, the U.S. Department of Veteran's Affairs, and the Consumer Financial Protection Bureau's policies, regulations, and guidelines.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Assume jurisdiction of this case;

B. Grant Plaintiff the maximum damages she seeks on her counts, including the maximum statutory damages available under each claim where statutory damages are available, and the maximum economic and non-economic damages available, including actual, emotional, general, and other damages;

C.  Award Plaintiff actual damages to be established at trial;

D.  Award Plaintiff statutory damages under RESPA;

E.  Award Plaintiff the costs of this litigation;

F.  Award Plaintiff her attorney fees;

G.  Declare that Defendant's acts and practices violate RESPA;

H.  Enjoin Defendant from adding excess arrears to Plaintiff's Mortgage Loan Account, and from filing a foreclosure against Plaintiff until it has satisfied its promises to Plaintiff and the requirements mandated by federal law, including but not limited to those proscribed in RESPA, Reg X., the CARES Act, and the U.S. Department of Housing and Urban Development's, the U.S. Department of Veteran's Affairs, and the Consumer Financial Protection Bureau's policies, regulations, and guidelines; and

I.  Award such other relief as the Court deems appropriate.

Dated: August 8, 2022.

Respectfully Submitted,
Kohl & Cook Law Firm, LLC

/s/Timothy J. Cook
Timothy J. Cook (0093538)
Sean M. Kohl (0086726)
Brian A. Brown (0096733)
1900 Bethel Rd.
Columbus, OH 43220
PH (614) 763-5111
FAX (937) 813-6057
Timothy@KohlCook.com
Brian@KohlCook.com
*Attorneys for Plaintiff*

## JURY TRIAL DEMANDED

Plaintiff respectfully requests a jury trial on all triable issues.


/s/ *Timothy J. Cook*
Timothy J. Cook (0093538)